# In the United States Court of Federal Claims
### OFFICE OF SPECIAL MASTERS
No. 21-711V
UNPUBLISHED

| | |
|---|---|
| KATHLEEN RICE,<br><br>     Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>     Respondent. | Chief Special Master Corcoran<br><br>Filed: April 8, 2025 |

*Jessi Carin Huff*, Mctlaw, Seattle, WA

*Mitchell Jones*, U.S. Department of Justice, Washington, DC, for Respondent.

### **RULING ON ENTITLEMENT**[1]

On January 12, 2021, Kathleen Rice filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that she suffered a shoulder injury related to vaccine administration ("SIRVA") caused by an influenza ("flu") vaccine administered on October 30, 2019. Petition at 1. The case was assigned to the Special Processing Unit of the Office of Special Masters. For the reasons set forth below, I find Petitioner entitled to compensation.

  **I.  Relevant Procedural History**

Following the filing of this case, the parties began informal settlement discussions on July 5, 2023, but ultimately concluded that settlement was unlikely. Respondent

---

[1] In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

subsequently filed a Rule 4(c) Report defending this case on May 23, 2023. ("Report"), ECF No. 42 at 6-8. Petitioner filed a Motion for Ruling on the Record on July 31, 2023. Motion for Finding of Fact and Conclusions of Law ("Mot."), ECF No. 44. Respondent filed a response on October 23, 2023. Respondent's Response to Petitioner's Motion for Findings of Fact and Conclusions of Law ("Resp."), ECF No. 47. Petitioner filed a reply on October 30, 2023. Petitioner filed a reply on October 30, 2023. Reply to Respondent's Response to Petitioner's Motion for Ruling on the Record ("Reply"), ECF No. 48.

The matter is ripe for resolution.

## II.     Petitioner's Medical Records

On October 30, 2019, Petitioner received a flu vaccine in her left shoulder. Ex. 1 at 1. She had no prior history of shoulder pain or issues.

A little more than two weeks later, Petitioner contacted Teladoc complaining of shoulder pain on November 17, 2019. Ex. 22 at 4. She stated that her shoulder pain was present "ever since receiving a flu shot four weeks ago." Petitioner was advised to follow-up with urgent care. *Id.* That same day, Petitioner complained of upper arm pain for approximately four weeks "since a few days after" the flu vaccine. Ex. 2 at 4. An examination showed painful but full range of motion. *Id.* at 5.

On November 21, 2019, Petitioner reported ongoing shoulder and arm pain to her primary care physician. Ex. 4 at 13. She noted her pain began one-week post vaccination. *Id.* X-rays were unremarkable, and she was prescribed gabapentin and hydrocodone. Petitioner went to the radiology department of Virginia Mason Medical Center that same day with complaints of shoulder pain "since" the flu vaccine. Ex. 11 at 524. Her examination was unremarkable.

On November 26, 2019, Petitioner saw Dr. John Osland, an orthopedist. Ex. 4 at 30. She complained of shoulder pain that began "almost immediately" after the flu vaccine. *Id.* Petitioner also reported that "[e]ver since then she has lost motion in the shoulder and it has been pailful…." *Id.* An examination showed limited range of motion with pain in all directions. *Id.* at 32. She was diagnosed with adhesive capsulitis with possible impingement and nerve entrapment. A steroid injection was administered, and she was referred to physical therapy. *Id.*

Petitioner began physical therapy on December 10, 2019. Ex. 4 at 41. At the first visit, she reported she "got a flu shot about 6 weeks ago", was sore after, "and the pain got steadily worse." *Id.* Between December 10, 2019 and February 28, 2019, she

attended ten physical therapy sessions. *Id.* at 63-64. By February 28 she reported her shoulder was 75% improved. *Id.* at 64.

On December 26, 2019, Petitioner again contacted Teledoc with complaints of shoulder pain. Ex. 22 at 6-7. She stated her pain "[s]tarted with flu injection 2.5 months ago and it was a little sore and didn't get better." *Id.* at 7.

Petitioner next complained of shoulder pain over six months later, on July 16, 2020, when she reported ongoing arm pain since last receiving a flu vaccine in 2019. Ex. 5 at 233-35. She was diagnosed with adhesive capsulitis and a frozen shoulder that was "maybe triggered by flu shot." *Id.* at 235. Petitioner returned for further testing on July 31, 2020. The record notes that Petitioner's "history is suggestive of a possible shoulder injury related to vaccine administration." *Id.* at 212. X-ray and ultrasound exams on July 31 were unremarkable. *Id.* at 201, 09.

Petitioner returned to physical therapy periodically between August 2020 and November 2021. On August 20, 2020, Petitioner had an initial evaluation for additional physical therapy related to her shoulder pain. Ex. 21 at 130. Onset is listed as nine months ago, and the mechanism of injury is indicated as "[f]lu shot 9 months ago." *Id.* In May of 2021, Petitioner had another four physical therapy sessions, this time for both her shoulder and unrelated right hip pain. Ex. 24 at 12. The shoulder pain "continues to be due to adhesive capsulitis" which caused limited range of motion, weakness, and pain. *Id.* And on November 18, 2021, Petitioner returned for physical therapy related to her hip and left shoulder pain. Ex. 25 at 8.

### III.  Affidavit Evidence

Petitioner submitted a declaration in support of her claim. Ex. 30. She states that the flu vaccine she received on October 30, 2019, was "extremely painful", and that it worsened in the days following the vaccine. *Id.* at 1-2. She also stated that she does not recall telling anyone that her pain began "a few days after the administration of the flu shot", and that "the pain was immediate." *Id.* at 2.

Mr. Chris Hall, Petitioner's husband, submitted a declaration in support of this claim. Ex. 28. He recalls that "[w]hen [Petitioner] came home from receiving her flu shot, she began complaining about how painful it was." *Id.*

Ms. Wendy Shipp, a colleague of Petitioner, also provided a declaration. Ex. 29. She stated that Petitioner appeared to be in pain on November 2, 2019. *Id.* When asked

3

the problem, Petitioner told her "she had an incredibly painful flu injection a few days prior and that her shoulder still hurt from the injection." *Id.*

### IV. Fact Findings and Ruling on Entitlement

Pursuant to Vaccine Act Section 13(a)(1)(A), a petitioner must prove, by a preponderance of the evidence, the matters required in the petition by Vaccine Act Section 11(c)(1). In addition to requirements concerning the vaccination received, the duration and severity of petitioner's injury, and the lack of other award or settlement,[3] a petitioner must establish that she suffered an injury meeting the Table criteria, in which case causation is presumed, or an injury shown to be caused-in-fact by the vaccination she received. Section 11(c)(1)(C).

The most recent version of the Table, which can be found at 42 C.F.R. § 100.3, identifies the vaccines covered under the Program, the corresponding injuries, and the time period in which the particular injuries must occur after vaccination. Section 14(a). Pursuant to the Vaccine Injury Table, a SIRVA is compensable if it manifests within 48 hours of the administration of an influenza vaccine. 42 C.F.R. § 100.3(a)(XIV)(B). A vaccine recipient shall be considered to have suffered SIRVA if such recipient manifests all of the following:

> (i) No history of pain, inflammation or dysfunction of the affected shoulder prior to intramuscular vaccine administration that would explain the alleged signs, symptoms, examination findings, and/or diagnostic studies occurring after vaccine injection;
>
> (ii) Pain occurs within the specified time frame;
>
> (iii) Pain and reduced range of motion are limited to the shoulder in which the intramuscular vaccine was administered; and
>
> (iv) No other condition or abnormality is present that would explain the patient's symptoms (*e.g.*, NCS/EMG or clinical evidence of radiculopathy, brachial neuritis, mononeuropathies, or any other neuropathy).

42 C.F.R. § 100.3(c)(10).

---

[3] In summary, a petitioner must establish that she received a vaccine covered by the Program, administered either in the United States and its territories or in another geographical area but qualifying for a limited exception; suffered the residual effects of her injury for more than six months, died from her injury, or underwent a surgical intervention during an inpatient hospitalization; and has not filed a civil suit or collected an award or settlement for her injury. *See* § 11(c)(1)(A)(B)(D)(E).

A special master must consider, but is not bound by, any diagnosis, conclusion, judgment, test result, report, or summary concerning the nature, causation, and aggravation of petitioner's injury or illness that is contained in a medical record. Section 13(b)(1). "Medical records, in general, warrant consideration as trustworthy evidence. The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium. These records are also generally contemporaneous to the medical events." *Cucuras v. Sec'y of Health & Hum. Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993).

Accordingly, where medical records are clear, consistent, and complete, they should be afforded substantial weight. *Lowrie v. Sec'y of Health & Hum. Servs.*, No. 03-1585V, 2005 WL 6117475, at *20 (Fed. Cl. Spec. Mstr. Dec. 12, 2005). However, the Federal Circuit has recently "reject[ed] as incorrect the presumption that medical records are always accurate and complete as to all of the patient's physical conditions." *Kirby v. Sec'y of Health & Hum. Servs.*, 997 F.3d 1378, 1383 (Fed. Cir. 2021). Medical professionals may not "accurately record everything" that they observe or may "record only a fraction of all that occurs." *Id.*

Medical records may be outweighed by testimony that is given later in time that is "consistent, clear, cogent, and compelling." *Camery v. Sec'y of Health & Hum. Servs.*, 42 Fed. Cl. 381, 391 (1998) (citing *Blutstein v. Sec'y of Health & Hum. Servs.*, No. 90-2808, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998). The credibility of the individual offering such testimony must also be determined. *Andreu v. Sec'y of Health & Hum. Servs.*, 569 F.3d 1367, 1379 (Fed. Cir. 2009); *Bradley v. Sec'y of Health & Hum. Servs.*, 991 F.2d 1570, 1575 (Fed. Cir. 1993).

### A. Factual Findings Regarding a Table SIRVA

After a review of the entire record, I find that a preponderance of the evidence demonstrates that Petitioner has satisfied the QAI requirements for a Table SIRVA.

#### 1. Petitioner Had No Prior Left Shoulder Condition or Injury that would Explain her Symptoms

The first requirement for a Table SIRVA is a lack of problems associated with the affected shoulder prior to vaccination that would explain the symptoms. 42 C.F.R. § 100.3(c)(10)(i). Respondent does not dispute that Petitioner meets this criterion. I find

5

that she has demonstrated a lack of history of pain, inflammation, or dysfunction of her left shoulder that would explain her symptoms.

### 2. Onset of Petitioner's Injury Occurred within Forty-Eight Hours of Vaccination

The medical records preponderantly establish onset of injury close-in-time to vaccination. Petitioner first reported shoulder pain on November 17, 2019. Ex. 22 at 4. Her doctor noted Petitioner had pain "ever since receiving a flu shot…." *Id.* Thereafter, she linked her shoulder pain to this same vaccination. *See,* e.g., Ex. 11 at 524 (complaining of shoulder pain "since" the flu vaccine); Ex. 4 at 30 (reporting pain "almost immediately" after the flu vaccine); Ex. 22 at 6-7 (stating Petitioner's pain "[s]tarted with flu injection 2.5 months ago … and didn't get better.). Petitioner's declarations corroborate the onset timeline, stating that her pain started when she received the vaccination. Ex. 28 at 1; Ex. 29 at 1; Ex. 30 at 1.

Respondent argues that Petitioner was inconsistent in describing the onset of her pain. Resp. at 6-7. He also contends that Petitioner reported onset outside the 48-hour requirement of a Table Claim on at least two occasions. Ex. 2 at 4 (stating her pain began a few days after the flu shot and never subsided); Ex. 4 at 13 (record noting Petitioner "felt fine for a week after her vaccine before the pain came on"). And he maintains that witness statements should be given little weight because they were prepared over a year after the events. *Id.*

While the record does contain inconsistencies, when viewed in its entirety there is ample evidence to find proper onset near in time to the vaccination. Further, Program petitioners are not required to marshal records setting forth with chronographic specificity the precise day and hour that their onset manifested. As noted above, Petitioner generally linked her shoulder pain to the October 30, 2019 vaccination, and she more often than not maintained in began in a timeframe consistent with this Table requirement.

Accordingly, there is preponderant evidence that establishes the onset of Petitioner's left shoulder pain more likely than not occurred within 48-hours of vaccination.

### 3. Petitioner's Pain was Limited to her Left Shoulder

Petitioner's pain was limited to her left shoulder. Respondent does not contest this aspect of Petitioner's claim, and there is nothing in the records to suggest otherwise.

### 4. There is No Evidence of Another Condition or Abnormality

The last criteria for a Table SIRVA state that there must be no other condition or abnormality which would explain a petitioner's current symptoms. 42 C.F.R. § 100.3(c)(10)(iv). Respondent does not contest this aspect of Petitioner's claim, and there is nothing in the records to suggest that any such condition or abnormality exists.

### B. Other Requirements for Entitlement

In addition to establishing a Table injury, a petitioner must also provide preponderant evidence of the additional requirements of Section 11(c). Respondent does not dispute that Petitioner has satisfied these requirements in this case, and the overall record contains preponderant evidence to fulfill these additional requirements.

The record shows that Petitioner received a flu vaccine intramuscularly on October 30, 2019, in the United States. Ex. 1 at 1; *see* Section 11(c)(1)(A) (requiring receipt of a covered vaccine); Section 11(c)(1)(B)(i)(I) (requiring administration within the United States or its territories). Further, Petitioner suffered the residual effects of her injury for more than six months. Ex. 5 at 233; *see* Section 11(c)(1)(D). There is no evidence that Petitioner has collected a civil award for her injury. Ex. 8; Section 11(c)(1)(E) (lack of prior civil award).

Based upon all of the above, Petitioner has established that she suffered a Table SIRVA. Additionally, she has satisfied all other requirements for compensation. I therefore find that Petitioner is entitled to compensation in this case.

### Conclusion

**In view of the evidence of record, I find that there is preponderant evidence that Petitioner satisfies the QAI requirements for a Table SIRVA. Further, based on the evidence of record, I find that Petitioner is entitled to compensation.**

**IT IS SO ORDERED.**

<u>s/Brian H. Corcoran</u>
Brian H. Corcoran
Chief Special Master